# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

IN RE:

Hugh Michael Sonk          Case No.: 18-49858

                               Chapter: 7

            Debtor,        Judge: Maria L. Oxholm

_____/

## AMENDED MOTION OF QUICKEN LOANS INC. FOR TERMINATION OF THE AUTOMATIC STAY, AND WAIVING THE PROVISIONS OF FED.R.BANKR.P.4001 (a)(3) AS TO THE PROPERTY LOCATED AT 505 E HURON ST., 403, ANN ARBOR, MI 48104

Quicken Loans Inc. ("Movant") moves this Court, under §§ 361, 362, 363, 554 and other sections of the Bankruptcy Reform Act of 1978, as amended (the "Bankruptcy Code") and under Rules 4001, 6007 and other rules of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for an Order conditioning, modifying or terminating the automatic stay imposed by 11 U.S.C. § 362 of the Bankruptcy Code, and for a waiver of the provisions of Fed.R.Bankr.P.4001(a)(3). In support of this Amended Motion, the Movant states:

1.      The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b)(2).

2.      The venue of this case and this Motion are proper under 28 U.S.C. §§ 1408 and 1409. Movant consents to entry of final order or judgment on this proceeding.

3.      A petition under Chapter 7 of the United States Bankruptcy Code was filed with respect to the Debtor on July 13, 2018.

4.      On August 20, 2013 the Debtor listed above obtained a loan from Quicken Loans Inc., in the amount of $296,000.00, and such loan was evidenced by a promissory note dated August 20, 2013 (the "Note"). Debtor executed a Mortgage dated August 20, 2013 (the "Security Instrument"), conveying to Mortgage Electronic Registration Systems, Inc as nominee for  Quicken Loans Inc., a lien on real and/or personal property  (the "Collateral") owned by the Debtor, located at 505 E Huron St., 403, Ann Arbor, MI 48104.  The lien is the first lien on the collateral.

5.      The Note and Security Instrument were transferred as follows:

(a) To Quicken Loans Inc. on October 18, 2017.  The transfer is evidenced.

6.      In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant. Movant, directly or through an agent, has possession of the Note. The Note is either made payable to Movant or has been duly endorsed.

7.      As of August 3, 2018, the outstanding amount of the obligations less any partial payments or suspense balance is $353,359.47. This amount may not include accrued interest, fees, late charges, escrow shortages, or corporate advances.

8.      In addition to the other amounts due to Movant reflected in this Motion, as of the date hereof, in connection with seeking the relief requested in this Motion, Movant has also incurred $750.00 in legal fees and $181.00 in costs.

9.      As of August 3, 2018, the earliest month and year of any arrearage is April 1, 2018.

10. The value of the Collateral may be $520,000.00. This valuation is based upon the Debtor's filed Bankruptcy Schedules.

11. Upon information and belief, the aggregate amount of encumbrances on the Property listed in the Schedules or otherwise known, including but not limited to the encumbrances granted to (i) Movant ($353,359.47); Donald S. Chisholm ($225,000.00); Sloan Plaza Condominium Association ($3,400.00).

12. Cause exists for relief from the automatic stay for the following reasons:

    a. Pursuant to § 362(d)(1), Movant lacks adequate protection of its interest in the Property as Debtor continuously fails to make his monthly payment obligation.

    b. Pursuant to 11 U.S.C. § 362(d)(2)(A), Debtor has no equity in the Property and pursuant to §362(d)(2)(B) the Property is not necessary for an effective reorganization.

13. Concurrence of Debtor for the relief sought was requested on July 20, 2018, and at the time of filing the motion, has not been received.

**WHEREFORE**, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following.

1. Relief from the stay, for all purposes allowed by law, the Note, the Mortgage, and applicable law, including but not limited to the right to foreclose allowing Movant to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property and any and all other collateral pledged under the Mortgage.

2. That the Order shall be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

3. That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

4. For such other and further relief as this Court deems just and proper.


Date:  August 22, 2018          /s/ Adam Berman
                                         Potestivo & Associates, P.C.
                                         Attorney for Quicken Loans Inc.
                                         251 Diversion St.
                                         Rochester, MI 48307
                                         (248) 853-4400
                                         aberman@potestivolaw.com

## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

IN RE:

Hugh Michael Sonk

               Debtor,

_____/

Case No.: 18-49858
Chapter: 7
Judge: Maria L. Oxholm

### NOTICE OF AMENDED MOTION OF SECURED CREDITOR FOR TERMINATION OF THE AUTOMATIC STAY AND WAIVING THE PROVISIONS OF FED.R.BANKR.P. 4001(a)(3)

Counsel for Quicken Loans Inc. has filed papers with the court to terminate the automatic stay and waive the provisions of Fed.R.Bankr.P. 4001(a)(3).

**Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

If you do not want the court to enter an order to terminate the automatic stay, or if you want the court to consider your views on the Motion of Creditor For Terminating  the Automatic Stay and Waiving the Provisions of Fed.R.Bankr.P. 4001(a)(3) within fourteen (14) days, you or your attorney must:

1.    File with the court a written response or an answer pursuant to Fed.R.Civ. P.8 (b), (c) and (e), explaining your position at:

United States Bankruptcy Court
211 West Fort Street
Detroit, MI 48226

If you mail your response to the court for filing, you must mail it early enough so the court will **receive** it on or before the date stated above.

You must also mail a copy to:

| | | |
|---|---|---|
| Timothy J. Miller | Adam Berman | Office of the U.S. Trustee |
| Chapter 7 Trustee | Attorney for Movant | 211 West Fort St. |
| 64541 Van Dyke | 251 Diversion St. | Suite 700 |
| Suite 101 | Rochester, MI 48307 | Detroit, MI 48226 |
| Washington, MI 48095 | | |

If a response or answer is timely filed and served, the clerk will schedule a hearing on the motion and you will be served with a notice of the date, time, and location of the hearing.

**If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.**

Date:  August 22, 2018

    /s/  Adam Berman
Potestivo & Associates, P.C.
Attorney for Quicken Loans Inc.
251 Diversion St.
Rochester, MI 48307
(248) 853-4400
aberman@potestivolaw.com

## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

IN RE:

Hugh Michael Sonk

                    Debtor,

_____/

Case No.: 18-49858
Chapter: 7
Judge: Maria L. Oxholm

## ORDER TERMINATING THE AUTOMATIC STAY  FOR THE REAL PROPERTY LOCATED AT 505 E HURON ST., 403, ANN ARBOR, MI 48104 AND WAIVING THE PROVISIONS OF FED.R.BANKR.P.4001(a)(3)

This matter came to be considered on the Amended Motion for Termination from Stay (the "Motion") filed by Quicken Loans Inc. ("Movant"). Movant has alleged that good cause exists for granting the Amended Motion and that Debtor, the Chapter 7 Trustee, and all other necessary parties were served with the Amended Motion and with notice and opportunity to object to the Motion.  No party filed a response or otherwise appeared in opposition to the Amended Motion.

Based on this, it appears appropriate to grant the relief requested.

**NOW THEREFORE;**

**IT IS HEREBY ORDERED** that the Amended Motion is granted and the automatic stay imposed by 11 U.S.C. § 362 is terminated with respect to the Movant.

**IT IS FURTHER ORDERED** that the automatic stay imposed by 11 U.S.C. § 362 is terminated with respect to the enforcement of the lien as it relates to the property located at 505 E Huron St., 403, Ann Arbor, MI 48104.

**IT IS FURTHER ORDERED** that the provisions of Fed.R.Bankr.P. 4001(a)(3) are waived and shall be effective immediately upon entry of this order.

**IT IS FURTHER ORDERED** that this order shall remain in effect, notwithstanding the conversion of this bankruptcy case to a case under any other Chapter of Title 11 of the United States Bankruptcy Code.

**IT IS FURTHER ORDERED** that at Movant's sole discretion and in order to avoid foreclosure of said property, Movant may offer and provide Debtor with information regarding a potential Forbearance Agreement, Loan Modification, Refinance Agreement or other Loan Workout/Loss Mitigation options and the parties may enter into any such agreement with Debtor to the extent permitted by the law. Movant may also continue to protect its lien pursuant to the terms of security instrument, to the extent allowed by law. Movant may not enforce or threaten any personal liability against Debtor if Debtor's personal liability is discharged in this bankruptcy case or while the case remains pending.

## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

IN RE:

Hugh Michael Sonk            Case No.: 18-49858

                                  Chapter: 7

             Debtor,          Judge: Maria L. Oxholm

_____/

## PROOF OF SERVICE

      I, Rachelle Magolan, state that on the 22nd day of August 2018 I served a copy of the Amended Motion for Terminating the Automatic Stay, Proposed Order Terminating the Automatic Stay and Waiving the Provisions of Fed.R.Bankr.P. 4001(a)(3), Notice of Motion and Proof of Service upon:

| | | |
|---|---|---|
| Hugh Michael Sonk | Ernest Hassan | Sloan Plaza Condominium |
| 505 E. Huron St., Apt. 403 | 26100 American Drive | Association |
| Ann Arbor, MI 48104 | Suite 500 | c/o Legacy, LLC |
| | Southfield, MI 48034 | 905 Corporate Office Drive |
| | | Suite 200 |
| | | Milford, MI 48381 |
| Timothy J. Miller | Office of the U.S. Trustee | |
| 64541 Van Dyke | 211 West Fort St. | Donald S. Chisholm |
| Suite 101 | Ste. 700 | 777 Eisenhower Parkway |
| Washington, MI 48095 | Detroit, MI 48226 | Suite 108 |
| | | Ann Arbor, MI 48108 |

by placing same in a well sealed envelope, by first class mail, with the proper prepaid postage thereon and depositing same in a United States Mail receptacle in the City of Rochester, State of Michigan to Debtor and interested parties, and via CM-ECF electronic filing to Debtor's Attorney, the Chapter 7 Trustee, and Office of the U.S. Trustee.

                         ***/s/ Rachelle Magolan***
                         Rachelle Magolan
                         Employee of Potestivo & Associates, P.C.
                         251 Diversion St.
                         Rochester, MI 48307
                         (248) 853-4400
                         rmagolan@potestivolaw.com

Redacted

Sonk, Hugh

# NOTE

August 20, 2013       Ann Arbor       MI
[Date]       [City]       [State]

505 E Huron St, 403
Ann Arbor, MI 48104
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 296,000.00       (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Quicken Loans Inc.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.250%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on October 1, 2013 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on September 1, 2043 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 6577, Carol Stream, IL 60197

or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,634.53

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services    Redacted
Redacted

Form 3200 1/01
VMP5N (0803).00
Page 1 of 3

Initials: ↑↓ξ

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of Fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Redacted

Initials: ___

Form 3200 1/01
VMP5N (0803).00
Page 2 of 3

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ 08/20/2013 (Seal)        _____ (Seal)
Hugh M. Sonk                          -Borrower                                            -Borrower

_____ (Seal)                     _____ (Seal)
                                      -Borrower                                            -Borrower

_____ (Seal)                     _____ (Seal)
                                      -Borrower                                            -Borrower

_____ (Seal)                     _____ (Seal)
                                      -Borrower                                            -Borrower

*[Sign Original Only]*

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Initials: HMS

Form 3200 1/01
VMP5N (0803).00
Page 3 of 3

Redacted

Redacted

# MORTGAGE
*Roc 2nd*

*(a)*

Return To:
Document Management
Quicken Loans Inc.
1050 Woodward Ave
Detroit, MI 48226-1906
Redacted

When Recorded Return To:
Indecomm Global Services
2925 Country Drive
St. Paul, MN 55117

MIN Redacted

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated     August 20, 2013     ,
together with all Riders to this document.
**(B) "Borrower"** is Hugh M. Sonk, a single man

Borrower's address is 505 E Huron St , Ann Arbor, MI  48104
. Borrower is the mortgagor under this Security Instrument.

**MICHIGAN**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**     Form 3023 1/01
Redacted

(VMP)-6A(MI) (1302).00
®
Page 1 of 15          Initials: *U S*

Redacted

VMP Mortgage Solutions, Inc.

Time Submitted for Recording
Date 9/9 20 13 Time 9:15 Am
Lawrence Kestenbaum
Washtenaw County Clerk/Register

**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel Redacted

**(D) "Lender"** is Quicken Loans Inc.

Lender is a Corporation
organized and existing under the laws of                     the State of Michigan
Lender's address is 1050 Woodward Ave, Detroit, MI 48226-1906

**(E) "Note"** means the promissory note signed by Borrower and dated          August 20, 2013
The Note states that Borrower owes Lender Two Hundred Ninety Six Thousand and
00/100                                                                                                    Dollars
(U.S. $ 296,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than          September 1, 2043          .
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☒ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] Legal Attached |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**MICHIGAN**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**
VMP-**6A(MI)** (1302).00                          Page 2 of 15                 Initials: HS                 **Form 3023 1/01**

Redacted

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

### TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, warrant, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the
County of Washtenaw :
[Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]


SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.
SUBJECT TO COVENANTS OF RECORD.


Parcel ID Number:      Redacted                which currently has the address of
505 E Huron St, 403                                                          [Street]
                    Ann Arbor          [City] , Michigan 48104       [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

**MICHIGAN**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**
VMP®-6A(MI) (1302).00           Page 3 of 15        Initials: N.S.        Form 3023 1/01

Redacted

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any;

**MICHIGAN**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**
VMP -6A(MI) (1302).00                Page 4 of 15          Initials: H.S.          **Form 3023 1/01**

Redacted

18-49858-mlo     Doc 16     Filed 08/22/18     Entered 08/22/18 11:00:17     Page 16 of 43

(c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

**MICHIGAN**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**
VMP-6A(MI) (1302).00                  Page 5 of 15            Initials: H S            Form 3023 1/01

Redacted

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the

**MICHIGAN**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**
VMP-6A(MI) (1302).00      Page 6 of 15      Initials: HS      **Form 3023 1/01**

Redacted

work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**MICHIGAN**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**
VMP-6A(MI) (1302).00                    Page 7 of 15              Initials: H S              **Form 3023 1/01**

Redacted

18-49858-mlo    Doc 16    Filed 08/22/18    Entered 08/22/18 11:00:17    Page 19 of 43

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

**MICHIGAN**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if

**MICHIGAN**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**
VMP-**6A(MI)** (1302).00                     Page 9 of 15                  Initials: _MLS_                **Form 3023 1/01**

Redacted

18-49858-mlo    Doc 16    Filed 08/22/18    Entered 08/22/18 11:00:17    Page 21 of 43

acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly

**MICHIGAN**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**
VMP-**6A(MI)** (1302).00                    Page 10 of 15               Initials: H.S               **Form 3023 1/01**

Redacted

18-49858-mlo    Doc 16    Filed 08/22/18    Entered 08/22/18 11:00:17    Page 22 of 43

notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

**MICHIGAN**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**
**VMP**-6A(MI) (1302).00   Page 11 of 15   Initials: ᴶⁱˢ   **Form 3023 1/01**

Redacted

(d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any

**MICHIGAN**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**
VMP-**6A(MI)** (1302).00                    Page 12 of 15               Initials: LLS                    **Form 3023 1/01**

Redacted

Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give notice of sale to Borrower in the manner provided in Section 15. Lender shall publish and post the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall prepare and file a discharge of this Security Instrument. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**MICHIGAN**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**
**VMP-6A(MI)** (1302).00                    Page 13 of 15              Initials: H.S              **Form 3023 1/01**

Redacted

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____ 08/20/2013 (Seal)
Hugh M. Sonk                          -Borrower

_____

_____ (Seal)
                                         -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                 -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                 -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                 -Borrower

**MICHIGAN**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**
VMP-6A(MI) (1302).00                    Page 14 of 15                    Form 3023 1/01

Redacted

**STATE OF MICHIGAN,** Washtenaw

County ss:

Acknowledged before me in
County, Michigan, on
Hugh M. Sonk, a single man

Washtenaw
August 20, 2013

by

*[signature]*

Notary Public, State of Michigan,
County of
My commission expires   6.3.19
Acting in the County of

SUZIE C BAKER
Notary Public - Michigan
Washtenaw County
My Commission Expires Jun 3, 2019
Acting in the County of Washtenaw

This instrument was prepared by Bertha Esnayra
1050 Woodward Ave
Detroit, MI 48226-1906
Redacted

Loan origination organization  Quicken Loans Inc.
NMLS ID   Redacted
Loan originator Jason Keast
NMLS ID   Redacted

**MICHIGAN**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**
VMP-6A(MI) (1302).00     Page 15 of 15     Initials:   **Form 3023 1/01**
Redacted

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this 20th day of August, 2013 ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Note to
Quicken Loans Inc.

(the
"Lender") of the same date and covering the Property described in the Security Instrument
and located at:

505 E Huron St, 403
Ann Arbor, MI 48104
[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements
of, a condominium project known as:

SLOAN PLAZA CONDO
[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the
Condominium Project (the "Owners Association") holds title to property for the benefit or use
of its members or shareholders, the Property also includes Borrower's interest in the Owners
Association and the uses, proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. Condominium Obligations.** Borrower shall perform all of Borrower's obligations under
the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i)
Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii)
code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when
due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally
accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which
is satisfactory to Lender and which provides insurance coverage in the amounts (including
deductible levels), for the periods, and against loss by fire, hazards included within the term
"extended coverage," and any other hazards, including, but not limited to, earthquakes and
floods, from which Lender requires insurance, then: (i) Lender waives the provision in

**MULTISTATE CONDOMINIUM RIDER -** Single Family - **Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT** Redacted
**Form 3140 1/01**                              Redacted
Wolters Kluwer Financial Services
VMP ®-8R (0810)
Page 1 of 3          Initials: NS

Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Redacted

**MULTISTATE CONDOMINIUM RIDER -** Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
VMP ®-8R (0810)　　　　　　　　Page 2 of 3　　　Initials: ᴺᴸS　　**Form 3140 1/01**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider.

_____ 08/20/2013 (Seal)          _____ (Seal)
Hugh M. Sonk                          -Borrower                                           -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                           -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                           -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                           -Borrower

Redacted

**MULTISTATE CONDOMINIUM RIDER -** Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                                                           **Form 3140 1/01**
VMP ®-8R (0810)                          Page 3 of 3

## EXHIBIT A - LEGAL DESCRIPTION

Tax Id Number(s): Redacted

Land Situated in the City of Ann Arbor in the County of Washtenaw in the State of MI

Unit 19, Sloan Plaza, a condominium, according to the Master Deed thereof, as recorded in Liber 2033, Pages 111 through 172, inclusive, Washtenaw County Records, and as amended by First Amendment to Master Deed recorded in Liber 2118, Pages 939 through 946, inclusive, Washtenaw County Records, and as amended by Second Amendment to Master Deed recorded in Liber 2164, Pages 755 through 759, inclusive, Washtenaw County Records, and as amended by Third Amendment to Master Deed recorded in Liber 2201, Pages 406 and 407, Washtenaw County Records, and as amended by Fourth Amendment to Master Deed recorded in Liber 2395, Pages 685 through 705, Washtenaw County Records., as as designated as Replat No. 3 of Washtenaw County Condominium Subdivision Plan No. 69, together with the rights in general common elements and limited common elements, as set forth in the above Master Deed, and as described in Act 59 of the Public Acts of 1978, as amended.

Subject to: Easements and restrictions of record

Commonly known as: 505 E Huron St 403 403, Ann Arbor, MI 48104

Redacted



**Recording Requested By/Return To:**

Final Docs Team
1050 Woodward Ave.
Detroit, MI 48226

**This Instrument Prepared By:**
Cody Levins
Quicken Loans Inc.
1050 Woodward Ave.
Detroit, MI 48226
**Tel. No.:** Redacted

## Assignment of Mortgage                    Redacted

FOR VALUE RECEIVED, Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for
QUICKEN LOANS INC. whose address is P.O. Box 2026, Flint, MI 48501-2026
                                                         its successors and assigns, does hereby grant,
assign, transfer and convey, unto   Quicken Loans Inc.

organized and existing under the laws of   The State of Michigan                        , a corporation
                                                                      (herein "Assignee"), whose
address is 1050 Woodward Ave. Detroit, MI 48226

                                                                                    , its successors
and assigns, all its right, title and interest in and to a certain Mortgage dated   August 20, 2013          ,
made and executed by
HUGH M. SONK, A SINGLE MAN

whose address is  505 E Huron St 403 Ann Arbor MI, 48104

to and in favor of Mortgage Electronic Registration Systems, Inc ("MERS") as a nominee for QUICKEN LOANS
INC. its successors and assigns                                                          upon the
following described property situated in   WASHTENAW                              County, State
of Michigan                              :

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A
PART  HEREOF SUBJECT TO COVENANTS OF RECORD.

Tax Parcel #: Redacted

Mortgage Recorded On: 09/09/2013              Book/Liber#: 4998
Document Number: Redacted                     Page#: 979
**MIN:** Redacted                   MERS Phone: Redacted
                                    Redacted

MERS Assignment of Mortgage
VMP ®                                                           VMP95M (1104).00
Wolters Kluwer Financial Services  © 2000, 2011                        Page 1 of 3

such Mortgage having been given to secure payment of
Two Hundred Ninety Six Thousand Dollars and 00/100

($ 296,000.00          ) (Include the Original Principal Amount) which Mortgage is of record
in Book, Volume, or Liber No.  4998          , at page  979          (or as No.
Redacted                          ) of the                          Records of
WASHTENAW   County, State of
Michigan                          and all rights accrued or to accrue under such Mortgage.

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to
the terms and conditions of the above-described Mortgage.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on
October 18, 2017          .

Witness Adrienne Ashford

Witness Rachael Hamel

Attest

**Mortgage Electronic Registration Systems, Inc.**
("MERS") as nominee for
QUICKEN LOANS INC.

By: _____
(Signature)

Name:  Zachary Bennett

Title:   Assistant Secretary of MERS

Redacted

MERS Assignment of Mortgage
VMP ®
Wolters Kluwer Financial Services  © 2000, 2011

VMP95M (1104).00
Page 2 of 3

**Acknowledgement**

State of Michigan
County of Wayne
On 10/18/2017    , before me Tabatha Bronner    , a Notary Public of Michigan , personally appeared
Zachary Bennett        , Assistant Secretary of Mortgage Electronic Registration Systems, Inc.,
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s)
whose name(s) is/are subscribed to within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s)
on the instrument, the person(s), or the entity upon behalf of which the person(s) acted, executed
the instrument.

WITNESS my hand and official seal.

Tabatha Bronner
Notary Public of Michigan
Macomb County
Expires 3/26/2019
Acting in the County of Wayne

Name: Tabatha Bronner
Title: Notary Public

Redacted

MERS Assignment of Mortgage
Wolters Kluwer Financial Services  © 2000, 2011

VMP95M (1104).00
Page 3 of 3

EXHIBIT A - LEGAL DESCRIPTION

Tax Id Number(s): Redacted

Land Situated in the City of Ann Arbor in the County of Washtenaw in the State of MI

Unit 19, Sloan Plaza, a condominium, according to the Master Deed thereof, as recorded in Liber 2033, Pages 111 through 172, inclusive, Washtenaw County Records, and as amended by First Amendment to Master Deed recorded in Liber 2118, Pages 939 through 946, inclusive, Washtenaw County Records, and as amended by Second Amendment to Master Deed recorded in Liber 2164, Pages 755 through 759, inclusive, Washtenaw County Records, and as amended by Third Amendment to Master Deed recorded in Liber 2201, Pages 406 and 407, Washtenaw County Records, and as amended by Fourth Amendment to Master Deed recorded in Liber 2395, Pages 685 through 705, Washtenaw County Records., as as designated as Replat No. 3 of Washtenaw County Condominium Subdivision Plan No. 69, together with the rights in general common elements and limited common elements, as set forth in the above Master Deed, and as described in Act 59 of the Public Acts of 1978, as amended.

Subject to: Easements and restrictions of record

Commonly known as:  505 E Huron St 403 403, Ann Arbor, MI 48104



Title: LOAN MODIFICATION AGREEMENT (MORTGAGE)

This Document Prepared By:
**MATT LIPSKY**
**QUICKEN LOANS INC.**
**635 WOODWARD AVE**
**DETROIT, MI 48226**
Redacted

When Recorded Mail To:
**TITLE SOURCE**
**662 WOODWARD AVENUE**
**DETROIT, MI 48226**

Tax/Parcel #: Redacted

_____ [Space Above This Line for Recording Data] _____

| | |
|---|---|
| **Original Principal Amount: $296,000.00** | **Fannie Mae Loan No.:** Redacted |
| **Unpaid Principal Amount: $274,731.43** | **Loan No:** Redacted |
| **New Principal Amount: $285,281.78** | Redacted |
| **Capitalization Amount: $10,550.35** | |

# LOAN MODIFICATION AGREEMENT (MORTGAGE)

(Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 30TH  day  of  **JANUARY, 2018**, between **HUGH M. SONK, INDIVIDUALLY AND AS TRUSTEE OF THE HUGH M. SONK TRUST AGREEMENT DATED NOVEMBER 8, 1995** ("Borrower") whose address is **505 E HURON ST #403, ANN ARBOR, MICHIGAN 48104** and **QUICKEN LOANS INC.** ("Lender"), whose address is **635 WOODWARD AVE, DETROIT, MI 48226**, amends and supplements (1) the Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated **AUGUST 20, 2013** and recorded on **SEPTEMBER 9, 2013** in **INSTRUMENT NO.** Redacted  **3OOK 4998  PAGE 979**, of the OFFICIAL Records of **WASHTENAW COUNTY, MICHIGAN**, and (2) the Note bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

**505 E HURON ST #403, ANN ARBOR, MICHIGAN 48104**
(Property Address)

LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae Uniform
Instrument Form 3179 (fixed) / 3162 (step) (rev. 01/09) Redacted

Redacted

the real property described being set forth as follows:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1) As of **FEBRUARY 1, 2018**, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$285,281.78**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2) Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **5.2500%** from **FEBRUARY 1, 2018**. Borrower promises to pay monthly payments of principal and interest of U.S. **$1,423.19** beginning on the **1ST** day of **MARCH, 2018** and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of **5.2500%** will remain in effect until the principal and interest are paid in full. If on **FEBRUARY 1, 2058** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3) If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4) Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

   (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note

   (b) all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5) Borrower understands and agrees that:

LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae Uniform                          Redacted
Instrument Form 3179 (fixed) / 3162 (step) (rev. 01/09) Redacted

Page 2

(a)     All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b)     All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)     Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d)     All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e)     Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f)     Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging ☐.

6)  Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or

LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae Uniform Instrument Form 3179 (fixed) / 3162 (step) (rev. 01/09) Redacted

Page 3

Redacted

encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae Uniform          Redacted
Instrument Form 3179 (fixed) / 3162 (step) (rev. 01/09 Redacted

Page 4

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

7) By this paragraph, **Lender is notifying Borrower that** any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae Uniform
Instrument Form 3179 (fixed) / 3162 (step) (rev. 01/09) Redacted

Page 5

Redacted

18-49858-mlo    Doc 16    Filed 08/22/18    Entered 08/22/18 11:00:17    Page 40 of 43

In Witness Whereof, I have executed this Agreement.

Individually and as Trustee

Borrower: HUGH M. SONK, INDIVIDUALLY AND AS TRUSTEE OF THE
HUGH M. SONK TRUST AGREEMENT DATED NOVEMBER 8, 1995

$2-13-18$
Date

_____ [Space Below This Line for Acknowledgments] _____

**BORROWER ACKNOWLEDGMENT**

STATE OF MICHIGAN,
COUNTY OF _Washtenaw_

The foregoing instrument was acknowledged before me this _02/13/2018_ by
HUGH M. SONK, INDIVIDUALLY AND AS TRUSTEE OF THE HUGH M. SONK TRUST
AGREEMENT DATED NOVEMBER 8, 1995

_____
Notary Public

Print Name: _Alex G Yvonnou_

My Commission expires:
_09/23/2019_

Acting in the County of
_Washtenaw_

ALEX G YVONNOU
Notary Public, State of Michigan
County of Wayne
My Commission Expires Sep. 23, 2019
Acting in the County of _Washtenaw_

LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae Uniform
Instrument Form 3179 (fixed) / 3162 (step) (rev. 01/09) Redacted

Redacted

Page 6

In Witness Whereof, the Lender has executed this Agreement.

QUICKEN LOANS INC.

By _____    3/15/2018
        KARYN REA    (print name)        Date
                        (title)
___ **Loss Mitigation Officer** [Space Below This Line for Acknowledgments] ___

**LENDER ACKNOWLEDGMENT**

STATE OF MICHIGAN

COUNTY OF WAYNE

The foregoing instrument was acknowledged before me this ___ MARCH 15, 2018

by ___ KARYN REA ___, the ___ **Loss Mitigation Officer** ___ of QUICKEN LOANS

INC., a company, on behalf of said company.

_____
Notary Public

LEYOUN HARBIN
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF WAYNE
My Commission Expires March 10, 2023
Acting in the County of ___ WAYNE

Printed Name: _LEYOUN HARBIN_
My commission expires: _3/10/2023_

Drafted By:
QUICKEN LOANS INC.
635 WOODWARD AVE
DETROIT, MI 48226

LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae Uniform
Instrument Form 3179 (fixed) / 3162 (step) (rev. 01/09)Redacted
Page 7

Redacted

18-49858-mlo    Doc 16    Filed 08/22/18    Entered 08/22/18 11:00:17    Page 42 of 43

## EXHIBIT A - LEGAL DESCRIPTION

Tax Id Number(s) Redacted

Land situated in the City of Ann Arbor in the County of Washtenaw in the State of MI

Unit 19, Sloan Plaza, a condominium, according to the Master Deed thereof, as recorded in Liber 2033, Pages 111 through 172, inclusive, Washtenaw County Records, and as amended by First Amendment to Master Deed recorded in Liber 2118, Pages 939 through 946, inclusive, Washtenaw County Records, and as amended by Second Amendment to Master Deed recorded in Liber 2164, Pages 755 through 759, inclusive, Washtenaw County Records, and as amended by Third Amendment to Master Deed recorded in Liber 2201, Pages 406 and 407, Washtenaw County Records, and as amended by Fourth Amendment to Master Deed recorded in Liber 2395, Pages 685 through 705, Washtenaw County Records., as as designated as Replat No. 3 of Washtenaw County Condominium Subdivision Plan No. 69, together with the rights in general common elements and limited common elements, as set forth in the above Master Deed, and as described in Act 59 of the Public Acts of 1978, as amended.

Commonly known as:  505 E Huron St 403, Ann Arbor, MI 48104-1541

THE PROPERTY ADDRESS AND TAX PARCEL IDENTIFICATION NUMBER LISTED ARE PROVIDED SOLELY FOR INFORMATIONAL PURPOSES